UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDWIN RIVERA,

                         Plaintiff,

vs.

STANNAH STAIRLIFTS, INC., WAYNE
BROWN and WESLEY ROCKHOLD,

                         Defendants.

---

Civil Action No.   1:22-cv-8926

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff Edwin Rivera by and through his attorneys, The Law Office of Christopher Q.

Davis, PLLC, alleges upon knowledge and information and belief as follows:

### NATURE OF ACTION

1.      Plaintiff Edwin Rivera ("Mr. Rivera" or "Plaintiff") was employed by Defendants

Stannah Stairlifts, Inc. ("Stannah" or "the Company"), Wayne Brown ("Mr. Brown"), and Wesley

Rockhold ("Mr. Rockhold") (collectively, "Defendants") as a Sales Representative.

2.      Plaintiff brings this action against Defendants for violations of the Civil Rights Act

of 1866, 42 U.S.C. §1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000 et seq. ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 620

et seq. ("ADEA"); the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.*

("NYSHRL"); the New York City Human Rights Law, Title 8 of the Administrative Code of the

City of New York, § 8-107 *et. seq.*  ("NYCHRL"); and the New York State Equal Pay Act, N.Y.

Lab. Law § 194, ("NYSEPA").

3.      Defendants' violations are egregious in that Plaintiff was underpaid and endured

1

unequal treatment based on his age and race/color and unlawful retaliation for complaining about the same.

4.      Plaintiff now seeks lost back pay and benefits, lost front pay and benefits, compensatory and punitive damages, statutory penalties, attorneys' fees and costs, as well as declaratory and injunctive relief for violations of Plaintiff's statutory rights and injuries Plaintiff has sustained as a result of Defendants' unlawful employment discrimination based on his age and race/color and unlawful retaliation for complaining about the same.

## ADMINISTRATIVE PREREQUISITES

5.      Prior to the filing of this Complaint, on March 3, 2022, Mr. Rivera filed a formal charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his age and race/color and retaliation in violation of Title VII, the ADEA and the other laws listed above. On September 1, 2022, the EEOC issued a Notice of Right to Sue letter authorizing Mr. Rivera to bring this suit in federal or state court within 90 days.

6.      Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981, Title VII, and the ADEA, federal laws.

8.      This Court has personal jurisdiction over Defendants because the claims arose out of Defendants' contacts with New York and Defendants intentionally acted in such a way as to cause injury to Mr. Rivera in the State of New York.

9.      This Court has supplemental jurisdiction over Plaintiff's state law claims brought

under the NYSHRL, NYCHRL, and NYSEPA pursuant to 28 U.S.C. § 1367.

10.    Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to these claims occurred in this district and because the Defendants do business in this District.

## PARTIES

11.    Plaintiff Edwin Rivera is a sixty-four year old Hispanic man who presently and at all relevant times resided in Yonkers, New York.

12.    At all relevant times, Mr. Rivera was employed by Defendants.

13.    From 2005 through November 4, 2021, Defendants employed Mr. Rivera as an Installer and then a Sales Representative operating throughout New York City, Long Island, Northern New Jersey and areas north of New York City.

14.    Defendant Stannah Stairlifts, Inc. is a foreign corporation licensed to conduct business in the state of New York and is incorporated under the laws of the state of Massachusetts.

15.    Defendant Stannah Stairlifts, Inc.'s corporate headquarters is located at 20 Liberty Way, Suite A, Franklin MA 02038.

16.    Stannah is a company that manufactures, sells, and installs stairlifts.

17.    At all times relevant to this action, Defendant Stannah Stairlifts, Inc. employed more than 4 employees and made in excess of $500,000 in revenue annually.

18.    At all relevant times, Defendant Wesley Rockhold was the CEO of Stannah.

19.    At all relevant times, Defendant Wayne Brown was Plaintiff's direct supervisor and manager.

20.    Defendants Mr. Rockhold and Mr. Brown (the "Individual Defendants") exercise

3

control over the operations of Defendant Stannah.

21.     The Individual Defendants make decisions to hire and fire employees of Defendant

Stannah.

22.     The Individual Defendants exercise authority over the amounts and method of pay

for employees of Defendants Stannah.

23.     The Individual Defendants exercise authority over Defendant Stannah's employee

policies.

24.     The Individual Defendants exercise authority with respect to employee disciplinary

matters.

25.     Upon information and belief, The Individual Defendants were directly involved in

multiple decisions that give rise to the claims in this case, and had ultimate authority for those

decisions, including whether to provide Plaintiff with less favorable sales leads and the decision

to terminate Plaintiff's employment with Stannah.

26.     At all times relevant to this action, Defendants met the definition of Plaintiff's

"employer" under all applicable statutes, including but not limited to the NYSHRL, NYCHRL,

and NYSEPA.

## **FACTUAL ALLEGATIONS**

27.     Mr. Rivera was employed by the Company in New York.

28.     Upon information and belief, the Company has over 100 employees in total.

29.     Mr. Rivera was initially employed as an Installer.

30.     From approximately June 2005 through November 2021, Mr. Rivera was employed

by the Company as a Sales Representative.

4

31.     Since approximately 2018, Mr. Brown was Mr. Rivera's supervisor/immediate manager.

32.     Mr. Rivera's date of birth is October 14, 1958. He is currently sixty-four years old.

33.     For approximately fourteen years prior to 2019, Mr. Rivera was the only Sales Representative for the Company in the New York City metropolitan area. He did not have a well-defined territory and would be sent on sales calls in New York City, Long Island, Northern New Jersey and areas north of New York City.

34.     Prior to 2019, his combined salary and commissions ranged from $85,000 to $90,000.

35.     Stannah also provided Mr. Rivera with a Company vehicle and other benefits.

36.     From the time that Mr. Brown joined the Company, it was obvious to Mr. Rivera and other employees that Mr. Brown did not like Mr. Rivera.

37.     In late 2019, and early 2020, the Company hired two new Sales Representatives, Will Cooper and Moe Lev, to work in the New York City metropolitan area. Both of these individuals were less than thirty years old and were not Hispanic.

38.     Soon after these new Sales Representatives were hired, Mr. Rivera received fewer sales leads.

39.     The leads that were provided to him were less favorable than the leads that had been provided to him in the past.

40.     He was limited to a much smaller territory than in the past.

41.     The younger, non-Hispanic Sales Representatives were given promising sales leads outside of their territories. Mr. Rivera was not given those types of leads. He would often be given

5

leads in less affluent areas.

42.     Mr. Brown exercised significant control over the distribution of leads.

43.     As a result of the poor quality of the leads that Mr. Rivera was provided, his sales results declined, and he earned less in commissions than he had earned in the past.

44.     The Company's overall sales were not declining during this time. Mr. Rivera's effort and ability to convert leads into sales also did not decline.

45.     In approximately March or April 2020, Mr. Rivera was furloughed for several weeks.

46.     Mr. Cooper and Mr. Lev were not furloughed.

47.     When Mr. Rivera asked Mr. Brown why he was being treated differently, especially considering he had worked for the Company far longer than the newer Sales Representatives, Mr. Brown told Mr. Rivera, "Seniority doesn't matter."

48.     After Mr. Rivera returned to work from furlough, he emailed Mr. Rockhold informing him that he believed he was being treated less favorably because of his race and his age.

49.     Mr. Rivera also had a telephone call with Mr. Rockhold. He specifically complained about the unfair distribution of sales leads. He stated that the way that Mr. Brown treated him was racist and unfair.

50.     Upon information and belief, while the Company claims to have conducted an investigation, nothing was done to address the way that Mr. Rivera was being treated.

51.     After Mr. Rivera complained, Mr. Brown continued to give him less favorable leads and he began to unfairly criticize Mr. Rivera's performance.

52.     Among other things, Mr. Brown criticized the percentage of Mr. Rivera's leads that

became sales.

53.     Mr. Brown would spend time assisting Mr. Cooper and Mr. Lev with development and increasing sales. He did not assist Mr. Rivera in these ways.

54.     As a result of the unfair and discriminatory treatment that he experienced, Mr. Rivera suffered severe emotional distress.

55.     Mr. Rivera received many telemarketer/scam calls on his Company cell phone. Because he was in sales, he answered all of his calls, even if he suspected they were telemarketer/spam calls.

56.     In approximately October 2021, Mr. Rivera received a call on his Company cell phone. When he answered this call, he said "Hello" several times but only heard silence. Thinking this was another telemarketer/scam call, he said "Fuck you" before hanging up. He later learned this call was from the Company's office in Massachusetts.

57.     On November 4, 2021, Mr. Brown informed Mr. Rivera that his employment was terminated purportedly as result of this incident. The Company never asked Mr. Rivera what happened leading up to this telephone call.

58.     The reasons the Company provided for the termination of Mr. Rivera's employment are a pretext for discrimination and retaliation. Among other things, other Company employees used the word "Fuck" ("the F word") at work and were not disciplined. Mr. Brown used the F word at work more frequently than any other coworker with whom Mr. Rivera had ever interacted. Mr. Brown would use the F word repeatedly on telephone calls and in meetings where multiple employees were present. Upon information and belief, Mr. Brown once got into an argument with one of the Company's telemarketers and he repeatedly used the F word in that argument.

7

59.     The Company's actions have caused Mr. Rivera serious harm including: (1) a reduction of his earnings; (2) the loss of his employment on November 4, 2021; and (3) severe emotional distress both during his employment and as a result of the termination of his employment.

**COUNT I**
**Disparate Treatment in Violation of Section 1981**
**(Civil Rights Act of 1866, 42 U.S.C. § 1981)**

60.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

61.     Plaintiff is a Hispanic man, and as such he belongs to a protected class under Section 1981.

62.     Defendants have discriminated against Plaintiff on the basis of his race in violation of Section 1981 by, inter alia, denying him the equal terms and conditions of employment by subjecting him to disparate treatment based on his race in the form of: giving him inferior sales leads compared to his non-Hispanic counterparts; furloughing him and not his non-Hispanic counterparts; scrutinizing him more than his non-Hispanic counterparts; assisting only his non-Hispanic counterparts with development of sales leads; and terminating his employment.

63.     But for Plaintiff's race, he would not have been subjected to disparate treatment.

64.     Mr. Brown and Mr. Rockhold, who exercised managerial/supervisory control over Plaintiff, participated in the discriminatory acts and/or failed to take corrective action when they learned of the discriminatory acts.

65.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or

8

economic harm, for which he is entitled to an award of damages.

66.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

67.     Defendants' unlawful actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

## COUNT II
### Retaliation in Violation of Section 1981
### (Civil Rights Act of 1866, 42 U.S.C. § 1981)

68.     Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

69.     Plaintiff is a Hispanic man, and as such he belongs to a protected class under Section 1981.

70.     Plaintiff engaged in protective activities under Section 1981 when he informed Defendants that he believed he was being treated less favorably because of his race.

71.     Defendants knew about the protected activity.

72.     In response to Plaintiff's protected complaints, Defendants retaliated against Plaintiff by, inter alia, terminating him.

73.     Defendants had no valid business justification for the retaliatory actions taken against Plaintiff following his engagement in protected activity.

74.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in

9

violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

75.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

76.     Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

**COUNT III**
**Race Discrimination in Violation of Title VII**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"))**

77.     Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

78.     Plaintiff was an "employee" within the meaning of Title VII.

79.     Defendants were Plaintiff's "employer" within the meaning of Title VII.

80.     Plaintiff is a Hispanic man and as such he belongs to a protected class under Title VII.

81.     Plaintiff is, and has been at all relevant times, qualified for his position at Stannah and met or exceeded the Defendants' expectations.

82.     Defendants discriminated against Plaintiff on the basis of his race in violation of Title VII, by denying him the equal terms and conditions of employment, including but not limited to: giving him inferior sales leads, furloughing him and not his non-Hispanic counterparts;

scrutinizing him more than his non-Hispanic counterparts; assisting only his non-Hispanic counterparts with development of sales leads; and terminating him.

83.     A specific basis exists for imputing the objectionable conduct to each employer, including Mr. Brown and Mr. Rockhold, because the Defendants Mr. Brown and Mr. Rockhold were responsible for the conduct or openly condoned the conduct of others or failed to discourage the conduct of others and, as a result, either engaged in or endorsed the conduct specified.

84.     Defendants conduct as alleged herein, constituted unlawful employment practices and unlawful discrimination on the basis of Plaintiff's race in violation of Title VII.

85.     Defendants knew of the discriminatory conduct engaged in by Mr. Brown and failed to take immediate and appropriate corrective action to prevent such conduct; as such, the Defendants are liable.

86.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

87.     Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## COUNT IV
### Retaliation in Violation of Title VII
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.)

88.     Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

11

89.     Plaintiff is a Hispanic man, and as such he belongs to a protected class under Title VII.

90.     Plaintiff engaged in protected activities under Title VII when he informed Defendants that he believed he was being treated less favorably because of his race.

91.     Defendants knew about the protected activity.

92.     In response to Plaintiff's protected complaints, Defendants retaliated against Plaintiff by, inter alia, terminating him.

93.     Defendants had no valid business justification for the retaliatory actions taken against Plaintiff following his engagement in protected activity.

94.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

95.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

96.     Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**COUNT V**
**Age Discrimination in Violation of the ADEA**
**(29 U.S.C. § 620 et seq.)**

97.     Plaintiff hereby repeats and re-alleges each allegation made in the above paragraphs

12

as if fully set forth herein.

98.   Defendants' conduct as alleged constitutes unlawful age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 620, et seq.

99.   The stated reasons for Defendants' conduct were not the true reasons, but instead were a pretext to hide the Defendants' discriminatory animus.

100.   Plaintiff was sixty-three years old at the time of his termination.

101.   Defendants terminated Plaintiff because of his age and would not have terminated Plaintiff but for his age. There was no legitimate, non-discriminatory reason for Defendants' actions, and any reasons Defendant may advance are pretextual.

102.   The unlawful practice of age discrimination carried out by Defendants, as alleged herein, constitutes willful violations of the ADEA.

103.   Plaintiff was adversely affected by the practice of unlawful, willful age discrimination. Plaintiff has suffered substantial economic and noneconomic damages, and severe mental anguish and emotional distress in an amount to be determined at the hearing.

104.   Defendants' discriminatory and otherwise unlawful conduct was knowing, malicious, willful and wanton, and/or showed a reckless disregard for Plaintiff, which entitles Plaintiff to an award of attorneys' fees under the ADEA.

### COUNT VI
### Race Discrimination in Violation of the NYSHRL
### (New York State Human Rights Law N.Y. Exec. Law §§ 296 et seq.)

105.   Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

106.   Plaintiff was an "employee" within the meaning of the NYSHRL.

107.    Defendants were Plaintiff's "employer" within the meaning of the NYSHRL.

108.    Plaintiff is a Hispanic man, and as such he belongs to a protected class under the NYSHRL.

109.    Plaintiff is, and at all relevant times, has been qualified for his position with Defendants.

110.    Plaintiff satisfactorily performed his duties.

111.    Defendants' conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of Plaintiff's race in violation of New York State Human Rights Law N.Y. Exec. Law §§296, 296(1)(a).

112.    Particularly, Defendant subjected Plaintiff to adverse employment actions on account of his race and denied him equal opportunity and treatment in the conditions of employment, including, but not limited to, giving him inferior sales leads, furloughing him and not his non-Hispanic counterparts; scrutinizing him more than his non-Hispanic counterparts; assisting only his non-Hispanic counterparts with development of sales leads; and terminating him.

113.    By the acts described above, Defendants subjected Plaintiff to discrimination in violation of the NYSHRL.

114.    Defendants knew or should have known of the discriminatory conduct towards Plaintiff and yet failed to take immediate and appropriate corrective action to prevent such conduct; as such, Defendants are liable.

115.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages, including

14

monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

<u>COUNT VII</u>
**Age Discrimination in Violation of the NYSHRL**
**(N.Y. Executive Law § 290 et seq.)**

116.    Plaintiff hereby repeat and re-alleges each allegation made in the above paragraphs as if fully set forth herein.

117.    Defendants' conduct as alleged constitutes unlawful age discrimination in violation of the NYSHRL N.Y. Executive Law § 290 et seq.

118.    Defendants discriminated against Plaintiff on the basis of his age in violation of the NYSHRL by denying Plaintiff the same terms and conditions of employment available to employees who were not over 40 years of age, including but not limited to giving him inferior sales leads, furloughing him and not his younger counterparts; scrutinizing him more than his younger counterparts; assisting only his younger counterparts with development of sales leads; and terminating him because of his age.

119.    As a direct and proximate result of Defendants' discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of damages.

120.    As a direct and proximate result of Defendants' discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, harm to his

professional reputation, and loss of career fulfillment, for which he is entitled to an award of damages.

121.    Defendants' unlawful discriminatory actions were intentional, malicious, willful, and wanton violations of the NYSHRL for which Plaintiff is entitled to an award of punitive damages and attorneys' fees.

## COUNT VIII
### Retaliation in Violation of the NYSHRL
### (New York State Human Rights Law N.Y. Exec. Law §§ 296 et seq.)

122.    Plaintiff hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

123.    Plaintiff was an "employee" within the meaning of the NYSHRL.

124.    Defendants were Plaintiff's "employer" within the meaning of the NYSHRL.

125.    The NYSHRL makes it an unlawful practice to retaliate against an employee for complaining about a discriminatory practice.

126.    Plaintiff participated in protected activity when he complained to Defendant Rockhold that he was being treated unfairly because of his age and race.

127.    Shortly after Plaintiff made this complaint, Defendants terminated Plaintiff's employment.

128.    Defendants retaliated against Plaintiff for raising concerns about their discriminatory practices by terminating his employment.

129.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages, including

monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

## COUNT IX
**Race Discrimination in Violation of the New York City Human Rights Law**
**(Title 8 of the Administrative Code of the City of New York, §8-107 et seq. ("NYCHRL")**

130.    Plaintiff hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

131.    Plaintiff was an "employee" within the meaning of the NYCHRL.

132.    Defendants were Plaintiff's "employer" within the meaning of the NYCHRL.

133.    Plaintiff is a Hispanic man, and as such he belongs to a protected class under the NYCHRL.

134.    Plaintiff is, and at all relevant times, has been qualified for his position with Defendants.

135.    Plaintiff satisfactorily performed his duties.

136.    Defendants' conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of Plaintiff's race in violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, §8-107 *et seq*. ("NYCHRL").

137.    Particularly, Defendant subjected Plaintiff to adverse employment actions on account of his race and denied him equal opportunity and treatment in the conditions of employment, including, but not limited to, giving him inferior sales leads, furloughing him and not his non-Hispanic counterparts; scrutinizing him more than his non-Hispanic counterparts; assisting only his non-Hispanic counterparts with development of sales leads; and terminating him.

17

138.    By the acts described above, Defendants subjected Plaintiff to discrimination in violation of the NYCHRL.

139.    Defendants knew or should have known of the discriminatory conduct towards Plaintiff and yet failed to take immediate and appropriate corrective action to prevent such conduct; as such, Defendants are liable.

140.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

## COUNT X
### Age Discrimination in Violation of NYCHRL
### (Title 8 of the Administrative Code of the City of New York, §§ 8-101 et seq.)

141.    Plaintiff hereby repeats and re-alleges each allegation made in the above paragraphs as if fully set forth herein.

142.    Defendants' conduct as alleged constitutes unlawful age discrimination in violation of the NYCHRL, Title 8 of the Administrative Code of the City of New York §§ 8-101 et seq.

143.    Defendants discriminated against Plaintiff on the basis of his age in violation of the NYCHRL by denying Plaintiff the same terms and conditions of employment available to employees who were not over 40 years of age, including but not limited to giving him inferior sales leads, furloughing him and not his younger counterparts; scrutinizing him more than his younger counterparts; assisting only his younger counterparts with development of sales leads; and terminating him because of his age.

144.    As a direct and proximate result of Defendants' discriminatory conduct in violation

of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of damages.

145.    As a direct and proximate result of Defendants' discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, harm to his professional reputation, and loss of career fulfillment, for which he is entitled to an award of damages.

146.    Defendants' unlawful discriminatory actions were intentional, malicious, willful, and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages and attorneys' fees.

### COUNT XI
**Retaliation in Violation of the New York City Human Rights Law**
**(Title 8 of the Administrative Code of the City of New York, §§ 8-107 et seq.)**

147.    Plaintiff hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

148.    Plaintiff was an "employee" within the meaning of the NYCHRL.

149.    Defendants were Plaintiff's "employer" within the meaning of the NYCHRL.

150.    The NYCHRL makes it an unlawful practice to retaliate against an employee for complaining about a discriminatory practice.

151.    Plaintiff participated in protected activity when he complained to Defendant Rockhold that he was being treated unfairly because of his age and race.

19

152.    Shortly after Plaintiff made this complaint, Defendants terminated Plaintiff's employment.

153.    Defendants retaliated against Plaintiff for raising concerns about their discriminatory practice by terminating his employment.

154.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

## COUNT XII
### Violation of the New York State Equal Pay Act ("NYSEPA")
### (N.Y. Lab. Law § 194)

155.    Plaintiff alleges and incorporates by reference the allegation in each of the preceding paragraphs.

156.    Under the NYSEPA, an employee within a protected class cannot be paid a wage at a rate less than the employee without the status of the same protected class in the same establishment is paid for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

157.    Plaintiff is a Hispanic man and as such, a member of a protected class under the NYSEPA.

158.    While pay differences are allowed based on seniority, merit, quantity or quality of production, or bona fide factors such as education, training, or experience, at all relevant times Plaintiff was paid less, in the form of inferior leads and the resulting commissions, than his non-Hispanic counterparts with equal job titles despite superior experience, seniority, and quality of

work.

159.     Through inferior leads and commissions, Plaintiff was paid at a rate less than other employees outside the protected class despite performing substantially similar work under similar working conditions with Defendants.

160.     As a direct result of Defendants' violations of the NYSEPA, Plaintiff has endured significant damages and is entitled compensatory, punitive and treble damages, in addition to attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the Federal laws of the United States;

B.     That Defendants are found to have violated the provisions of New York State and City laws under a theory of discrimination based on race and age, and retaliation as to Plaintiff.

C.     That Defendants are found to have violated the New York State Equal Pay Act as to Plaintiff;

D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation,

embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and

emotional pain and suffering and loss of reputation, any other physical and mental injuries;

F.      An award of damages in an amount to be determined at trial, plus prejudgment

interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of

career fulfillment;

G.      An award of punitive damages;

H.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's

reasonable attorneys' fees to the fullest extent permitted by law; and

I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated

herein.

Dated: October 19, 2022                        Respectfully submitted,
       New York, New York

                                               __/s/ Brendan Sweeney__
                                               Brendan Sweeney, Esq.
                                               The Law Office of Christopher Q. Davis, PLLC
                                               80 Broad Street, Suite 703
                                               New York, New York 10004
                                               646-430-7930 (main)
                                               bsweeney@workingsolutionsnyc.com